UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| CLARA J. AROCHA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-015-C |
| | § | ECF |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Clara J. Arocha seeks judicial review of a decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record, the arguments of both parties, and the applicable law and recommends that the District Court affirm the Commissioner's decision.

**I.     Standard of Review**

Judicial review of the Commissioner's denial of disability benefits is statutorily limited to determining whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192

F.3d 492, 496 (5th Cir. 1999)). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II. Discussion

Arocha alleges she is unable to work because of pain in her back and knees, limitations related to a portal vein aneurysm that was surgically repaired, and migraine headaches. (Tr. 91, 323-33.) The Administrative Law Judge (ALJ) acknowledged that Arocha has severe impairments but determined that she retained the residual functional capacity to perform sedentary work with a sit/stand option. (Tr. 17.) The Appeals Council denied Arocha's request for review and, therefore, the decision is properly before the court. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

Arocha brings a number of allegations supporting her appeal. First, she claims the ALJ erred in giving little or no weight to opinions on a "Physical Residual Functional Capacity Questionnaire" completed by Patrick Edwards, M.D. (Tr. 286-89.) She contends that Dr. Edwards had been her treating physician for years and that she had seen him six to seven times in the year prior to the hearing (Tr. 332), but the ALJ failed to consider Dr. Edwards' opinions in accordance with the Commissioner's regulations. There are few treatment records from Dr. Edwards in the administrative record, and they show that Arocha visited Dr. Edwards' office on three occasions during a twenty-two month period – on August 8, 2000, September 12, 2001, and June 17, 2002. (Tr. 135-38.) The records also show that

Dr. Edwards had not seen Arocha in over one year at the time he completed the "Physical Residual Functional Capacity Questionnaire." (Tr. 135-38, 286-89.)

Nonetheless, contrary to Arocha's contentions, the ALJ evaluated Dr. Edwards' opinions as treating physician opinions in accordance with the Commissioner's regulations. In a case such as Arocha's, in which there is no physician opinion in the record that would contradict the opinion of a treating physician, the ALJ is required to evaluate the treating physician's opinion under the factors set forth under 20 C.F.R. §§ 404.1527(d), 416.927(d). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The factors include: (1) the length of the treating relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the physician provides medical evidence to support his opinion; (5) whether the opinion is consistent with the record as a whole; and (6) the specialization of the treating physician. *Id.* (citing 20 C.F.R.§§ 404.1527(d)). The ALJ in this case acknowledged that Dr. Edwards was one of Arocha's treating physicians and that he specialized in family practice. (Tr. 15-16.) He also acknowledged that Dr. Edwards indicated on the "Physical Residual Functional Capacity Questionnaire" that he saw Arocha for thirty-minute periods every three to six months. (Tr. 15.) Finally, the ALJ found that Dr. Edwards did not provide objective clinical findings to support his opinions, that his opinions were inconsistent with his own records and the record as a whole, and that his conclusions were not supported by medically acceptable clinical and laboratory diagnostic techniques. (Tr. 15- 16.) The ALJ's conclusions are supported by the record. Dr. Edwards' records from Arocha's office visits consist primarily of his notes of discussions

3

regarding Arocha's venous aneurysm and his referrals to other physicians for treatment of the condition. (Tr. 135-38.) There is no indication in Dr. Edwards' treatment notes that he examined Arocha or ordered diagnostic testing to determine the extent of her physical limitations or the impact they might have on her ability to work. (*Id.*) The lack of "medically acceptable clinical and laboratory diagnostic techniques" from Dr. Edwards provided good cause justifying the ALJ's decision not to accord controlling weight to the physician's opinions. *Perez v. Barnhart,* 415 F.2d 457, 466 (5th Cir. 2005).

Arocha also claims the ALJ placed great emphasis on Dr. Edwards' statement that she was experiencing slight symptoms of depression. The ALJ did not emphasize Dr. Edwards' statement; rather, he discussed evidence regarding Arocha's depression under the standard set forth under *Stone v. Heckler*, 752 F.2d 1099, 1106 (5th Cir. 1985). (Tr. 16-17.) Arocha next claims the ALJ discounted the fact that she suffers from degenerative arthritis in her knees and claims the ALJ stated that he did not consider her complaints regarding her knees to be valid after May 2004 because her physician, Travis Casler, M.D., did not recommend a followup appointment after that time. The ALJ recognized the impairments related to Arocha's knees. He acknowledged the results of x-rays which showed that Arocha had degenerative arthritis in both knees with medial joint space narrowing with a bone on bone situation on her right knee and minimal spacing in her left knee joint. (Tr. 15.) The ALJ was correct in stating that Dr. Casler had not scheduled a followup appointment after Arocha underwent injections in her knees on May 5, 2004. Dr. Casler noted that he had "outlined an activity and exercise program for her and [was] not setting a regular return appointment

4

for her." (Tr. 280.) The ALJ's statement regarding no followup appointment should not be construed as his determination that Arocha did not continue to suffer from knee problems after May 2004. The ALJ's statement regarding no scheduled followup appointment was made in a portion of his decision in which he summarized treatment Arocha had received for her arthritic knees. (Tr. 15.) In addition, he acknowledged that Arocha was scheduled to undergo surgery for her left knee days after the hearing was held on July 14, 2004. (Tr. 16, 319.)

    Arocha also faults the ALJ for stating he believed she would require only a short period of convalescence after surgery on her left knee. The medical records show, however, that Arocha experienced a short convalescence after undergoing knee surgery. Arocha underwent surgery on July 20, 2004. (Tr. 316.) On August 2, 2004, Arocha's physician noted that she had no pain and was ambulating well with crutches and noted on August 16, 2004, that her knee was improved and had full range of motion with no swelling, heat, or redness. (Tr. 308-09.) Although Dr. Casler injected Arocha's left knee in response to her complaints of pain on September 29, 2004, he also noted that there was no heat, redness, or swelling in either knee and determined that a regular return appointment was not necessary at that time. (Tr. 307.)

    Finally, substantial evidence supports the ALJ's determination that Arocha was not disabled and could perform sedentary work with a sit/stand option. Arocha alleged significant limitations related to her back and knees, but the medical evidence and Arocha's admissions indicate that she was not totally disabled. Arocha injured her back in a car

5

accident in 1993 and underwent a 360 degree fusion in 1997. (Tr. 38, 133.) Despite continuing pain in her back, she continued working after the surgery as a home health aide, a job that required her to lift and move patients on a daily basis. (Tr. 38-39, 91, 322.) Arocha did not quit working until November 2002 when she underwent surgery for her portal vein aneurysm. (Tr. 91, 211, 223.) The majority of the medical evidence in the records concern Arocha's aneurysm and although the evidence indicates that the aneurysm was significant enough to require surgery, the evidence also shows that Arocha recovered from the procedure. (Tr. 101, 322-29.)

Further, Arocha indicated in application documents that she had no limitations using her hands and testified that she could lift a gallon of milk. (Tr. 76, 325.) She was capable of sorting and folding laundry, driving and grocery shopping, and reported to Dr. Casler in 2004 that she was packing for a move and was doing a lot of stooping, lifting, and bending. (Tr. 76, 313, 325-26.)

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations and internal quotations omitted.) A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In this case there is substantial evidence to support the ALJ's decision; therefore, it is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).

**III.     Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Arocha's complaint with prejudice.

**IV.     Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   August 23, 2006.

NANCY M. KOENIG
United States Magistrate Judge